IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PATRICIA CARROLL, individually and as
personal representative of THE ESTATE OF
RONALD KENNETH CARROLL, deceased,

Plaintiffs,

v.

JOHN CRANE INC.,

Defendant.

OPINION AND ORDER

15-cv-373-wmc

This matter is set for trial commencing on Monday, July 17, 2017, at 9:00 a.m. In advance of the telephonic final pretrial conference scheduled for July 11, 2017, at 12:30 p.m., the court issues the following opinion on the parties' motions *in limine*.

OPINION

## I.  Plaintiffs' Motions *in limine*

### A.  Plaintiffs' "omnibus" motions *in limine* (dkt. #469)

Plaintiffs first filed a single, "omnibus" motion *in limine*, which is riddled with poorly developed, unnecessary and/or meaningless requests. While most can be answered by reference to the rules of evidence, the court will address the motion in its myriad, constituent parts in the hopes of addressing plaintiffs' apparent, wholly unfounded concern that this trial will be allowed to proceed like a shoot out at the O.K. Corral.

**1.    Defendant should be barred from discussing whether any money received by plaintiffs would be subject to taxation**

This motion is GRANTED as unopposed.[1]

**2 & 3.    Defendant should be barred from discussing whether plaintiffs have received or will receive money from the defendants with whom they reached settlement agreements**

Defendant opposes these motions to the extent that it may seek to cross-examine a witness about the *fact* of settlements with other defendants (as opposed to the substance or amount of those settlements) in order to argue the witness now has an incentive to diminish the roles of the settling defendants in causing Mr. Carroll's injuries while enhancing defendant's role.  Federal Rule of Evidence 408 permits the court to "admit [evidence of settlement] for other purposes, such as proving a witnesses' bias or prejudice."  Fed. R. Evid. 408(b).  Here, the fact of plaintiffs' settlement with other parties *may* be probative of bias, but only for a witness affiliated with an entity with whom plaintiffs settled *and* a plausible motive to foist causal responsibility for Mr. Carroll's injuries on one or more of the defendants.  Accordingly, this motion is RESERVED pending a proffer as to the *specific* evidence or argument defendant intends to offer at the final pretrial conference.

**4.    Defendant should be barred from discussing the court's rulings on any motions**

This motion is GRANTED as unopposed.

**5.    Defendant should be barred from discussing whether plaintiffs have attempted to resolve this suit with a settlement**

This motion is GRANTED as unopposed.

---

[1] Motions *in limine* granted as unopposed bind the opposing party to the same order.

**6.     Defendant should be barred from discussing plaintiffs' objections to its interrogatories and requests for production**

With defendant having provided no reason why any mention of plaintiffs' objections to its interrogatories and requests for production should be admissible, and the court being unable to articulate one, this motion is GRANTED.

**7.     Defendant should be barred from seeking any agreement or stipulation from plaintiffs and their counsel in the jury's presence**

Given that the court will tolerate no colloquy between the parties during trial, this motion is DENIED as wholly unnecessary.

**8.     Defendant should be barred from discussing the circumstances under which plaintiffs retained an attorney**

This motion is GRANTED as unopposed.

**9.     Defendant should be barred from disclosing that "any of the corporations which once made, manufactured, mined, sold or distributed asbestos . . . are in bankruptcy"**

Defendant opposes this motion on the grounds that any claims plaintiffs have submitted to bankruptcy trusts are admissible under Wisconsin law and relevant to whether defendant's products caused Mr. Carroll's injuries.  Whether a federal court should look to state law to determine the admissibility of this evidence, it is at least arguable, but the court agrees any claims plaintiffs have asserted that other entities are responsible for the development of Mr. Carroll's mesothelioma *are* potentially relevant both for purposes of deciding causation and damages.  Although the venue of that association (whether in a formal court submission, in a letter or orally) is not nearly so.  Accordingly, the court will GRANT the motion to the extent it seeks to exclude any

mention of court bankruptcy of others in the asbestos industry, and it will otherwise be DENIED.

**10.    Defendant should be barred from discussing whether plaintiffs have failed to call any witness who was "equally available to both parties"**

This motion is GRANTED as unopposed.

**11.    Defendant should be barred from referring to any effect of a claim on insurance rates**

This motion is GRANTED as unopposed.

**12.    Defendant should be barred from making demands of plaintiffs in the jury's presence**

For the same reasons as plaintiffs' seventh motion was denied as unnecessary, this motion is also DENIED.

**13.    Defendant should be barred from referring to the "contents of any interrogatory responses or discovery instruments which have been amended or supplemented"**

Having provided no explanation of the basis for this motion, plaintiffs' motion is DENIED.  Should either side wish to offer substantive, discovery responses as that of a party opponent, they should consult opposing counsel.

**14.    Defendant should be barred from referring to any injury or illness of Mr. Carroll other than those that are the subject of this lawsuit**

As defendant points out, Mr. Carroll's other injuries may be relevant to damages. Accordingly, this motion is GRANTED as to the liability phase of trial and RESERVED as to the damages phase pending further proffer by defendant at the final pretrial conference.

**15. Defendant should be barred from referring to how plaintiffs' lawyers are paid**

This motion is GRANTED as unopposed.

**16. Defendant should be barred from referring to punitive damages as "bonus monies"**

This motion is also GRANTED as unopposed.

**17. Defendant should be barred from stating during *voir dire* that plaintiffs' counsel is "trying to get you off the jury"**

Since the court will conduct the *voir dire* rather than counsel, this motion is DENIED as unnecessary.

**18. Defendant should be barred from referring to the effects of a judgment on insurance premiums or its ability to compete in the marketplace**

This motion is GRANTED as unopposed.

**19. Defendant should be barred from commenting on the amount of tort litigation and lawyers in the United States**

This motion is GRANTED as unopposed.

**20. Defendant should be barred from stating that it will be required to pay a money judgment out of its own pocket or whether its business has struggled recently**

This is yet another silly motion. Defendant will not be permitted to discuss whether it will have to pay a money judgment out of its own pocket, but its financial condition *may* be relevant to punitive damages. Therefore, this motion is GRANTED as to the liability phase of trial and RESERVED as to the damages phase.

**21.    Defendant should be barred from suggesting that smoking tobacco may contribute to the risk of mesothelioma for lack of scientific support**

Lacking further context and citation to authority in support, the court will RESERVE as to this motion for a more fulsome explanation at the final pretrial conference.  If plaintiffs have reason to believe that defendant's experts will offer an opinion regarding smoking tobacco and mesothelioma that is inadmissible under the Federal Rules of Evidence, then obviously that should have been the subject of a Daubert motion.  Nor can the court conceive of defendant arguing such a link exists without expert support.  On the other hand, the cumulative impacts of smoking related diseases *and* mesothelioma *may* be relevant at the damages phase.

**22.    Defendant should be barred from suggesting that "the SV 40 virus or polio vaccine causes mesothelioma, directly or indirectly"**

This motion is GRANTED as unopposed.

**23.    Defendant should be barred from stating that plaintiffs had sued other defendants in this lawsuit**

This motion is RESERVED for the same reasons as plaintiffs' second motion.

**24.    Defendant should be barred from making any in-court demonstrations of dust created by breaking or rubbing insulation material**

Of course, the parties may of use demonstrative exhibits, videos or photos to describe the materials at issue in this lawsuit, but they will not be permitted to simulate the dust created by working with insulation in open court. Subject to this narrowing clarification, this motion is GRANTED.

**25. Defendant should be barred from referring to personal experiences regarding cancer**

This motion is GRANTED as unopposed.

**26. Defendant should be barred from referring to any RICO lawsuit filed against asbestos plaintiff's firms**

This motion is GRANTED as unopposed.

**27. Defendant should be barred from referring to any ruling in the Garlock bankruptcy**

Defendant opposes this motion, explaining that it intends to "use[] rulings and opinions from this action to explore the basis of expert opinions and cross-examine [plaintiffs'] experts." This motion is RESERVED pending a specific showing as to what "rulings and opinions" defendant intends to proffer or discuss at the final pretrial conference.

**28. Defendant should be barred from making "any mention or argument or use of bankruptcy claims for proof of causation"**

This motion is GRANTED in part and DENIED in part for the reasons explained and to the extent allowed above with respect to plaintiffs' ninth motion.

**29. Defendant should be barred from making any specific reference to the amount of asbestos insulation that was contained in the spaces in which Mr. Carroll worked, as any estimate would be merely speculative**

Defendant opposes this motion, arguing that its expert, Captain McCloskey, will testify about "the type of materials Mr. Carroll used while he was in the U.S. Navy." The court will explore this motion with the parties at the final pretrial conference, and so it is RESERVED.

**30. Defendant should be barred from referring to any of Mr. Carroll's medical conditions aside from mesothelioma**

This broadly-worded motion overlaps considerably, if not fully, with plaintiffs' fourteenth motion, and so it is also GRANTED as to the liability phase of trial and RESERVED as to the damages phase subject to further proffer from defendant at the final pretrial conference.

**31. Defendant should be barred from questioning plaintiffs' witnesses about the Garlock Bankruptcy or RICO lawsuit**

Subject to its rulings as to paragraphs 26 and 27 above, the court agrees with defendant that this motion is vague and lacking sufficient explanation, and so it will be DENIED without prejudice to further explanation by plaintiffs at the final pretrial conference.

**32. Defendant should be precluded from arguing that "Mr. Carroll worked with and would have been exposed to a dose or amount of 'substantial' asbestos insulation while working in the Navy"**

Defendant opposes this motion on the basis that Mr. Carroll's sworn statements have earlier been used to make claims for money. Again, with the parties having provided little context as to their dispute regarding this motion, it is RESERVED pending further argument at the final pretrial conference.

**33. Defendant should be barred from referring to or showing to the jury a physical copy of any petition, complaint or amendments in this case**

Nothing will be "shown" to the jury unless admitted into evidence, except perhaps as a demonstrative. As for "referring" to "a physical copy," the court has no earthly idea to what plaintiffs' counsel refers. Defendant's counsel responds by grossly

misrepresenting the import of Fed. R. Evid. 801(d)2(D) -- "[a]ny statements made by [plaintiffs] during the course of this case constitute admissions and are therefore relevant and admissible." Having no context to decide this motion, it is DENIED and both parties are directed to become more familiar with the federal rules of evidence before the July 11th pretrial conference.

**34. Defendant should be barred from referring to Mr. Carroll's family history of cancers unrelated to asbestos**

This motion is GRANTED as unopposed.

**35. Defendant should be barred from referring to any payments that plaintiffs have received or will receive from any other source, including settlements in this lawsuit**

Although defendant generally will not be permitted to discuss any payments plaintiffs have received or will receive, evidence of settlements or claims submitted to bankruptcy trusts *may* be admissible, as already explained with respect to plaintiffs' second, third and ninth motions. Accordingly, this motion is GRANTED in part and RESERVED in part pending further argument at the final pretrial conference consistent with paragraphs 2, 3 and 9 above.

**36. Defendant should be barred from referring to Mr. Carroll's history of smoking**

Defendant opposes this motion, arguing that Mr. Carroll's smoking had damaged his lungs. This motion is RESERVED pending a proffer from defendant in advance of the damages phase of trial consistent with paragraph 21 above.

**37. Defendant should be barred from referring to any claim plaintiff has filed with any bankruptcy trust**

For the reasons already explained, this motion is RESERVED.

**38.    Defendant should be precluded from arguing that it should not be held to the knowledge of an expert regarding asbestos components or that it does not have a duty to monitor or test for health hazards associated with asbestos products**

As defendant points out, the standards regarding knowledge and testing to which defendant is held will be set forth in the jury instructions.  Accordingly, this motion is DENIED as moot.

**39.    Defendant should be precluded from arguing that the fact that there are no sales records for its products during the time Mr. Carroll worked for Wisconsin Power and Light demonstrates that they were not present during that time**

In response to this motion, defendant confirms that it "will not argue that a lack of sales documents is evidence of a lack of sales to Mr. Carroll's work prior to 1974." Therefore, to the extent plaintiffs' motion seeks to preclude such argument, it is GRANTED as unopposed, but since defendant points out that plaintiffs have designated deposition testimony that defendant did not retain sales records during the years Mr. Carroll worked at Wisconsin Power and Light, plaintiffs' motion is DENIED in all other respects.


**B.    Plaintiffs' motion *in limine* to exclude opinions offered by defendant's experts James Crapo, Victor Roggli and Mary Beth Beasley (dkt. #470)**

Plaintiffs move to preclude defendant's experts James Crapo, Victor Roggli and Mary Beth Beasley from offering any opinion that there exists a minimum threshold of chrysotile exposure required to cause mesothelioma.   The admissibility of expert

testimony in federal courts is governed principally by Federal Rule of Evidence 702 and

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

A district court functions as a "gatekeeper" regarding expert testimony.  The court

must determine whether a party's proffered expert testimony is relevant and reliable.

*Daubert*, 509 U.S. at 589; *see also United States v. Johnsted*, 30 F. Supp. 3d 814, 816 (W.D.

Wis. 2013) (expert testimony must be "not only relevant, but reliable").  Although expert

testimony is "liberally admissible under the Federal Rules of Evidence," *Lyman v. St. Jude*

*Med. S.C., Inc.*, 580 F. Supp. 2d 719, 723 (E.D. Wis. 2008), it must satisfy the following

three-part test:

> (1) the witness must be qualified "as an expert by knowledge, skill, experience, training, or education," Fed. R. Evid. 702;
>
> (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable, Daubert, 509 U.S. at 592-93; and
>
> (3) the testimony must assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed. R. Evid. 702.

*Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

In support of their motion, plaintiffs cite a number of scientific sources for the proposition that there is no recognized *safe* level of exposure to any type of asbestos fiber. Plaintiffs further assert that "multiple courts" have excluded the "chrysotile threshold" opinion, although they then cite a single Virginia state court opinion in support. That court granted a motion *in limine* to preclude opinions from one of the defendant's experts regarding a minimum threshold of dangerous exposure to chrysotile on the grounds that the expert failed to disclose the materials upon which he relied, either before or at his deposition. (Pls.' Opening Br. Ex. 16 (dkt. #471-16) at 4.)

Defendant argues that the "dose evidence" analysis to estimate the amount of asbestos fibers to which a person was exposed is a scientific, widely-utilized method to determine whether a given degree of exposure to asbestos can be determined to have been a substantial cause of mesothelioma. Defendant further asserts that determining a threshold below which exposure to asbestos can cause mesothelioma is a basic principle of toxicology. In support of its experts' opinions, defendant cites several sources, including one peer-reviewed source concluding that "low occupational exposures to chrysotile . . . are unlikely to cause mesothelioma." (Def.'s Opp'n Br. Ex. G (dkt. #499-7) at 211.)

Ultimately, plaintiffs' citations to multiple sources support a finding that there is no scientifically recognized safe level of exposure to asbestos -- that is, a level where the risk of contracting mesothelioma is miniscule or zero. On the other hand, where a person has had multiple exposures to asbestos, there is support for the proposition that minor exposure to chrysotile asbestos is likely to produce *little* risk of developing mesothelioma sufficient to satisfy Fed. R. Evid. 702. Indeed, as defendant points out, accepting plaintiffs' argument to the contrary would amount to endorsing an "any exposure" liability theory: "the viewpoint that, because science has failed to establish that any specific dosage of asbestos causes injury, every exposure to asbestos should be considered a cause of injury." *Yates v. Ford Motor Co.*, 113 F. Supp. 3d 841, 846 (E.D.N.C. 2015). This assertion actually has been excluded by "numerous courts" for its scientific unreliability. *Id.* Accordingly, the jury will have to weigh the opinions of the parties' experts on this subject, and this motion is DENIED.

C.    **Plaintiffs' motion *in limine* to exclude opinion testimony from defendant's expert John Henshaw (dkt. #477)**

In this motion, plaintiffs argue that defendant's witness John Henshaw is unqualified to offer expert opinion testimony because he gained all of his relevant experience for the purpose of litigation. While certainly fertile grounds for cross examination the court is unaware of case law disqualifying a legitimate expert in a field testifying simply because he developed that expertise in response to demand for these services. Plaintiffs also move to exclude Mr. Henshaw's expert opinion testimony that there is a threshold below which exposure to chrysotile asbestos does not present a risk of developing mesothelioma as failing to meet the level of scientific reliability to satisfy Rule

702.  If Henshaw is really opining that *no* risk exists, then the court might agree, but an opinion that the risk is "low" or creates no "substantial" risk is permissible for the same reason as it denied plaintiffs' motion as to defendant's experts James Crapo, Victor Roggli and Mary Beth Beasley.

As for Mr. Henshaw's relevant experience, plaintiffs argue that Henshaw lacked expertise regarding asbestos gaskets and packing before he began working at the Occupational Safety and Health Administration ("OSHA") in 2001, and he did little work regarding gaskets and packing while at OSHA.  Plaintiffs further assert that Mr. Henshaw's asbestos-related experience since leaving OSHA has all been acquired for the purpose of litigation.  In particular, plaintiffs point out that all four of the articles that Mr. Henshaw has authored were published within the last four years, three of those articles were "paid for" by defendants in asbestos litigation and only one of those articles was a study regarding gaskets, which was funded by the defendant here.  Plaintiffs would also make much of Mr. Henshaw's relationship with his former employer, ChemRisk, citing several publications criticizing scientific literature generated by that firm.

In response, defendant asserts that Henshaw is more than adequately qualified as an expert in the fields of industrial hygiene and public health.  Defendant also points out, among other things, that Mr. Henshaw has received an advanced degree in environmental and industrial health, and he has held managerial positions related to environmental health and industrial hygiene in both the public and private sectors. Finally, defendant points to the hundreds of exposure monitoring and assessments that Mr. Henshaw has conducted over his career including analyses of asbestos.  Specifically

for gaskets, Mr. Henshaw "has personally sampled for asbestos during gasket replacement activities and assessed worker exposures to asbestos while handling asbestos-containing gaskets and packing materials." (Def.'s Opp'n Br. (dkt. #498) at 4.)

On balance, the court finds that defendant has established that Mr. Henshaw is qualified to offer expert opinion testimony regarding Mr. Carroll's exposure to asbestos in this case, having gained sufficient relevant experience over the course of his career, except to the extent that he would opine there is essentially *no* risk of contracting mesothelioma at some level of exposure to asbestos. Accordingly, plaintiffs' motion is DENIED.


### D. Plaintiffs' motion *in limine* to exclude expert opinion testimony from defendant's expert Margaret McCloskey in its entirety (dkt. #484)

Plaintiffs further move to exclude testimony from defendant's expert Margaret McCloskey, opining on the level of Mr. Carroll's exposure to asbestos while serving as a "boiler tender" in the United States Navy, on the grounds that the subject of her testimony is within the ordinary understanding of lay people. Alternatively, plaintiffs seek to limit McCloskey's testimony regarding exposure during Mr. Carroll's time in the Navy, to what can be supported by twelve affidavits Carroll executed before his death, arguing that anything further would merely be speculative.

More specifically, plaintiffs argue that because Carroll described his tasks and the products with which he worked while in the Navy in his affidavits, the jury can reach its own conclusions as to the exposure to asbestos he encountered. In contrast, defendant argues that Ms. McCloskey will offer expert opinion testimony helpful for the jury's understanding based on her own experience as a Captain in the Navy. Provided that a

proper foundation is laid as to the factual basis for her assumptions about Carroll's actual responsibilities, the court is inclined to agree that McCloskey has technical, specialized knowledge that may be helpful to a lay jury under Rule 702 regarding "the nature of Mr. Carroll's job duties while in the Navy, the asbestos-containing products and equipment present on the USS Canberra during Mr. Carroll's time on the ship, and the fact that the United States Navy did not consider asbestos-containing gaskets and packing hazardous under normal use and removal during the time of [Mr. Carroll's] service." The court also agrees, however, that this opinion testimony should be limited to Mr. Carroll's actual job duties and the equipment with which he actually worked or was likely to work while serving in the Navy. Therefore, plaintiff's motion is DENIED.[2]

## II.     Defendant's Motions *in limine*

### A.     Defendant's "omnibus" motion *in limine* (dkt. #452)

Although not as numerous or blatantly unnecessary, defendant, too, files an "omnibus" motion *in limine* which is largely answered by the Federal Rules of Evidence, but which the court responds to briefly below.

#### 1.     Plaintiffs should be barred from referring to settlement negotiations between plaintiffs and defendant

This motion is GRANTED as unopposed.

---

[2] By virtue of this ruling, defendant's motion to strike (dkt. #532) will be denied as moot.

### 2. Plaintiffs should be precluded from referring to defendant as an "asbestos company" or as part of the "asbestos industry"

Defendant argues that any reference to John Crane Inc. as an "asbestos company" or as a company in the "asbestos industry" would unfairly cause the jury to believe that it "processed, milled or mined asbestos," and thus it would be unduly prejudicial under Fed. R. Evid. 403. In response, plaintiffs argue that those characterizations are accurate because defendant manufactured products that contained up to 85 percent asbestos. The court agrees with defendant that any reference to defendant as an "asbestos company" or as a company in the "asbestos industry" is misleading. Rather it used asbestos in manufacturing. Therefore, this motion is GRANTED; just as neither side will be allowed to make any other representation to the jury that the evidence will not support.

### 3. Plaintiffs should be precluded from presenting demonstrative evidence or other physical evidence to the jury until the court rules on its admissibility

Although defendant's motion is overbroad as titled, defendant notes specifically that the motion is simply intended to bar plaintiffs from demonstrating the dust released by grinding asbestos components. With this limitation, the motion is GRANTED as unopposed. Obviously, both sides should also be cautious about referring to, much less displaying, any evidence unless confident of its admission at trial. Similarly, counsel is advised to consult with opposing counsel about the use of a demonstrative exhibit and to bring any objection to the court's attention outside the jury's presence, so as to avoid an embarrassing admonishment in front of the jury.

### 4. Plaintiffs should be barred from referring to Mr. Carroll as an "asbestos victim"

The court agrees with plaintiffs that any reference to Mr. Carroll as a "victim of asbestos" or an "asbestos victim" would not be improper, assuming the evidence supports it (i.e. Mr. Carroll was diagnosed with mesothelioma, which as the court understands it, can only be contracted with exposure to asbestos), nor is it so inflammatory as to elicit an inappropriate emotional response from the jury. Accordingly, this motion is DENIED.

### 5. Plaintiffs should be barred from referring to the money or time defendant has spent defending this lawsuit or to defendant's wealth

Plaintiffs oppose this motion, arguing that the amount of time that defendant spent working with a third party, "ChemRisk litigation consultants," to create scientific literature and identify testifying experts may be relevant to the experts' bias and the reliability of their opinions. Plaintiffs also correctly point out that defendant's wealth may be relevant to punitive damages. Accordingly, defendant's broadly-worded motion is GRANTED only as to any general references to the time or money spent defending this lawsuit and as to any references to defendant's wealth during the liability phase of trial. The motion is DENIED in all other respects without prejudice to a further, specific proffer by defendant.

### 6. Plaintiffs should be barred from referring to any motions *in limine* filed by the parties

This motion is GRANTED as unopposed, except by number if raised in objection to the other party violating the court's rulings. Defendant is similarly admonished.

**7.** **Plaintiffs should be barred from referring to any friend, relative, co-worker or other individual injured by exposure to asbestos**

Since plaintiffs have identified no individual whose asbestos exposure shares the same characteristics as Mr. Carroll's, defendant argues that any reference to an asbestos-related injury suffered by any individual other than him should be precluded by Rule 403. In response, plaintiffs argue that evidence of another individual's exposure to asbestos may be relevant. For example, to the extent that defendant argues that the type of asbestos in defendant's products cannot cause mesothelioma, examples may be necessary. By way of further explanation, plaintiffs point out that evidence of another individual's exposure to asbestos may be relevant if properly relied upon by an expert in reaching his or her opinion. Given these explanations, defendant's broadly-titled motion is DENIED without prejudice to a further proffer at the pretrial conference.

**8.** **Plaintiffs should be barred from referring to defendant's participation or membership in any organization without laying a proper foundation**

Plaintiffs' response to this motion is something of a non-sequitur, arguing that even if defendant did not participate in a trade organization at a particular time, what was known in such an organization may be relevant to what it should have known. This motion is therefore, RESERVED pending a further proffer from the parties at the final pretrial conference.

**9.** **Plaintiffs should be barred from referring to any of defendant's products used after Mr. Carroll's last claimed date of exposure**

This motion is GRANTED as unopposed.

**10.  Plaintiffs should be barred from referring to any of defendant's products used at job sites where Mr. Carroll did not work**

Plaintiffs oppose this motion, arguing that evidence of defendant's products used at job sites where Mr. Carroll did not work may be relevant for reasons including defendant's awareness of the health risks associated with its products.  This motion is RESERVED pending a further proffer by plaintiffs and argument from the parties at the final pretrial conference.

**11.  Plaintiffs should be barred from eliciting hearsay testimony regarding whether a product contained asbestos**

Defendant asserts in support of its motion that "[n]either [plaintiffs] nor any of [Mr. Carroll's] co-workers [have] ever tested John Crane products for asbestos, and none of them has any foundation from which to conclude that any John Crane product contained asbestos."  Even assuming this is true, it would only exclude plaintiffs and co-workers from offering *expert* opinion.  Moreover, one could conceive of a number of hearsay exceptions that *might* apply to statements made to Mr. Carroll or his co-workers -- statement of a party opponent or proof of knowledge come to mind.  Accordingly, defendant's motion is DENIED without prejudice pending a further proffer by defendant as to the hearsay statement(s) it seeks to exclude.

**12.  Plaintiffs should be barred from referring to asbestos-related injuries of any co-workers**

Defendant's twelfth motion is similar to its seventh, although this motion only concerns evidence of asbestos injuries suffered by co-workers.  In opposition to this motion, plaintiffs argue that such evidence may be relevant depending on the facts and

arguments developed at trial. Without a specific example of a co-worker who contracted mesothelioma after exposure to asbestos similar enough to Mr. Carroll to satisfy Rule 403, however, defendant's motion may be well-taken. Accordingly, the court will RESERVE on this motion subject to a proffer from plaintiffs at the final pretrial conference as to any of Mr. Carroll's co-workers whose injuries from asbestos exposure may be relevant to the question of causation in the liability phase of trial.

### 13. Plaintiffs should be barred from suggesting that Mr. Carroll was exposed to crocidolite asbestos from defendant's products

In response to this motion, plaintiffs argue that defendant's knowledge about the dangers of crocidolite asbestos is relevant to what it knew or should have known about other types of asbestos it used in its products, but then agree not to argue or attempt to present evidence that Mr. Carroll was exposed to crocidolite asbestos in defendant's products. Given this, the motion is GRANTED as unopposed.

### 14. Plaintiffs should be precluded from eliciting lay testimony that Mr. Carroll "would or could have" worked with any of defendant's products

The court agrees with plaintiffs that defendant's fourteenth motion is both broad and vague, and so it is DENIED, although the court will certainly sustain objections to testimony that is not based on the witness's personal knowledge or otherwise calls for speculation.

**15.    Plaintiffs should be precluded from referring to any cross-claims that defendants filed against one another**

Defendant's motion is broad and poorly explained, while plaintiffs assert in response to this motion that they must be permitted to address any arguments defendant makes regarding another party as a cause of Mr. Carroll's injuries.  Since it is unclear what relief defendant actually seeks given that it has affirmatively pleaded cross-claims, albeit "to preserve the same," *or* whether plaintiffs disagree with the request, the motion is RESERVED.

**16.    Plaintiffs should be precluded from arguing that Mr. Carroll was injured by defendant's products simply because working with them created visible dust**

Defendant asserts that any argument that Mr. Carroll was injured by its products because they created visible dust should be precluded because there is a "very good chance" that the dust was comprised of non-asbestos components.  In response, plaintiffs cite several sources for the proposition that visible dust released from an asbestos-containing product signifies a dangerous level of exposure.  Because defendant's motion presents an issue that is ultimately for the jury to decide, it is DENIED.

**B.    Defendant's motions *in limine* to preclude evidence of post-exposure statements including material safety data sheets (dkt. #453), to preclude evidence of workers' compensation claims (dkt. #454) and to preclude evidence of post-exposure corporate statements (dkt. #455)**

In three separate motions, defendant moves to preclude evidence of workers' compensation claims filed against it, as well as evidence of statements made or adopted by defendant *after* Mr. Carroll's last claimed date of asbestos exposure in 1974.  In the main, defendant argues that all of this evidence lacks relevance to the liability issues that

the jury must decide at trial: first, any individuals who filed workers' compensation claims would not be exposed to asbestos under sufficiently similar circumstances to Mr. Carroll; and second, statements in defendant's documents that post-date Mr. Carroll's last year of asbestos exposure bear little on what defendant knew during the period of his exposure. Defendant also argues in particular that evidence regarding asbestos components with which employees worked in its facilities is too attenuated from any asbestos exposure resulting from Carroll's working with its finished products. As examples of the types of documents and statements it seeks to preclude, defendant identifies specifically: (1) memoranda internal to defendant; (2) documents related to air monitoring at defendant's facilities; (3) Material Safety Data Sheets ("MSDS") required by OSHA; and (4) warning labels attached to defendant's products.

Plaintiff opposes each of these three motions, arguing generally that: (1) evidence from the period of Mr. Carroll's exposure to asbestos is relevant to defendant's notice of asbestos-related health hazards; and (2) evidence post-dating his exposure may be relevant to defendant's culpability for the purpose of deciding punitive damages, the feasibility of earlier precautionary measures and causation. Generally speaking, the court is unimpressed with the notion that compensation claims or remedial actions post-dating Carroll's exposure have much or any relevance to the liability issues here. While plaintiffs' arguments may have some merit with respect to individual documents, the fail to provide any context for the court to decide. For instance, plaintiffs fail to identify even one piece of specific evidence they intend to introduce for any one of the several

purposes for which they argue workers' compensation claims and post-exposure evidence are relevant, particularly during the liability phase of trial.

Therefore, while the court will RESERVE on these three motions (dkt. ##453-455), it will be plaintiffs' burden to overcome the general presumption as to evidence post-dating Carroll's exposure by proffering at the final pretrial conference *specific* evidence from workers' compensation claims, post-exposure documents or statements from defendant that they intend to introduce during the *liability* phase of trial. In advance of the final pretrial conference, the parties are also encouraged to confer regarding any agreement that can be reached as to undisputed issues of causation, notice or feasibility of warnings, and to draft any factual stipulations they court might read to the jury in lieu of live testimony.


### C. Defendant's motion *in limine* to preclude "unscientific catch phrases in lieu of causation proof" (dkt. #456)

In yet another bare-bones motion, defendant seeks to preclude plaintiffs from and their experts from using phrases such as, "every exposure contributes" to mesothelioma, and "there is no safe level" of exposure, which, defendant argues, are not supported by the scientific literature. Instead, defendant asserts that plaintiffs' experts must demonstrate that Mr. Carroll was exposed to sufficient amount of asbestos from defendant's products to have caused his mesothelioma. In response, plaintiffs deny that their experts will offer any opinion that "every exposure" to asbestos causes mesothelioma, but instead that "mesothelioma is caused by a person's cumulative asbestos exposure and that exposures that contribute to the cumulative dose by meeting

certain well-defined criteria, can be considered a substantial factor in causing the mesothelioma." (Pls.' Opp'n Br. (dkt. #508) at 1.)

Certainly, the court agrees that an "every exposure" argument or expert opinion would not be sufficient for plaintiffs to establish that defendant's products were a substantial contributing factor in causing Mr. Carroll's injuries. *Cf. Tragarz v. Keene Corp.*, 980 F.2d 411, 420 (7th Cir. 1992) (noting that Illinois courts look to "the frequency, regularity, and proximity of exposure in determining whether the injured party's exposure to defendants' asbestos products was a substantial factor in causing the alleged injury"). However, this does not preclude such an observation as a starting point in thinking about what would or should be sufficient, nor to illustrate the potential of any exposure creating a risk of contracting mesothelioma, albeit not a substantial one.

Plaintiffs further argue that defendant incorrectly conflates the "every exposure" opinion with the recognized opinions that "no safe level of asbestos exposure has been established and that low levels of asbestos exposure above background levels can contribute to cause mesothelioma," for which they cite several sources as authority. (Pls.' Opp'n Br. (dkt. #508) at 12.) In light of the authority plaintiffs cite in support of the causation opinions their experts will offer at trial, the court has already found that they satisfy the requirements of Rule 702. Still, plaintiffs appear to use contradictory language in their opposition brief -- on one hand, disclaiming that their experts will offer an "every exposure" theory, but on the other, arguing that "the federal asbestos MDL has repeatedly ruled that the opinion that every exposure to asbestos above background levels contributes to cause mesothelioma[,] satisfy[ing] the *Daubert* admissibility standard for

expert testimony." (*Id.* at 20.) The latter statement is questionable at best. *See Yates*, 113 F. Supp. 3d at 847 ("His references to exposures 'above background' do not meaningfully distinguish his theory from other 'each and every exposure' theories, because the same shortcomings that plague the latter apply equally to the former.") (citing cases). Given the sloppiness of both sides' briefing regarding the experts' opinions, therefore, the court will RESERVE on this motion, while directing the parties to provide the court all expert reports before the telephonic pretrial conference and be prepared to make a proffer and argument regarding this subject, including, if necessary, setting forth explicitly the content of their experts' opinion testimony and the underlying methodology/sources on which they relied.

ORDER

IT IS ORDERED that:

1) Plaintiffs' "omnibus" motion *in limine* (dkt. #469) is GRANTED in part, DENIED in part and RESERVED in part, as set forth in this opinion.

2) Plaintiffs' motion *in limine* to exclude opinions offered by defendant's experts James Crapo, Victor Roggli and Mary Beth Beasley (dkt. #470) is DENIED.

3. Plaintiffs' motion *in limine* to exclude opinion testimony from defendant's expert John Henshaw (dkt. #477) is DENIED.

4) Plaintiffs' motion *in limine* to exclude expert opinion testimony from defendant's expert Margaret McCloskey (dkt. #484) is DENIED.

5) Defendant's "omnibus" motion *in limine* (dkt. #452) is GRANTED in part, DENIED in part and RESERVED in part, as set forth in this opinion.

6) Defendant's motions *in limine* to preclude evidence of: post-exposure statements including material safety data sheets (dkt. #453); workers' compensation claims (dkt. #454); and post-exposure corporate statements (dkt. #455) are RESERVED.

7) Defendant's motion *in limine* to preclude "unscientific catch phrases in lieu of causation proof" (dkt. #456) is RESERVED.

8) Defendant's motion to strike (dkt. #532) is DENIED as moot.


Entered this 7th day of July, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge